**UNDER SEAL**

**FILED**
CHARLOTTE, N. C.

JUN 16 2006

U. S. DISTRICT COURT
W. DIST. OF N. C.

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:06CR84-

**FILED UNDER SEAL**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | **SUPERSEDING BILL OF INFORMATION** |
| ) | |
| v. ) | Violations: |
| ) | 18 U.S.C. § 922(g) |
| ) | 18 U.S.C. § 1951 |
| HAISSAM NASHAR, a/k/a "Sam Nashar" ) | |

## THE UNITED STATES ATTORNEY CHARGES:

### INTRODUCTION

1. On or about January 29, 2002, HAISSAM NASHAR, a/k/a "Sam" ("NASHAR") sold his interest in the One Quick Stop convenience store ("One Quick Stop"), located at 2201 Freedom Drive, Charlotte, North Carolina, to Diri, LLC, which made monthly payments to NASHAR. NASHAR continued to maintain a financial interest in the financial success of One Quick Stop because the amount of said payments that Diri, LLC, made to NASHAR fluctuated with the amount of monthly revenues generated by the sale of consumer goods at One Quick Stop.

2. Midtown Food Mart #2 is a convenience store located in a building at 1552 Berryhill Road, Charlotte, North Carolina ("Midtown-Berryhill"), in close proximity to One Quick Stop. Midtown-Berryhill is owned by a partnership of individuals ("Midtown Owners"), which partnership is authorized to do business in the State of North Carolina, and is engaged in interstate and foreign commerce and in an industry that affects interstate and foreign commerce. Midtown-Berryhill competed and continues to compete with One Stop for revenue generated by the sale of consumer goods. The Midtown Owners also owned and operated two other convenience stores located in Charlotte, North Carolina.

3. After Midtown-Berryhill began selling consumer goods and competing with One Quick Stop, One Quick Stop's receipt of revenues from the sale of consumer goods decreased significantly, resulting in a reduction of monthly payments due and owing from Diri, LLC, to NASHAR.

4. As a result of declining revenues at the One Quick Stop, George Diri, a/k/a "G," a

*United States v. Nashar* – Superseding Bill of Information, p. 1

relative of the owners of Diri, LLC, Rico Aery ("Aery"), and others (collectively the "offenders") began to engage in violent and intimidating tactics against the Midtown Owners, for the purpose of obtaining from the Midtown Owners certain assets and the right to exercise exclusive control over such assets, including but not limited to real property, equipment, inventory of consumer goods, and the Midtown Owners' right to pursue a lawful business at the Berryhill location, that is, operation of a convenience store that generates revenue from the sale of consumer goods.

5. On or about December 4, 2002, George Diri told one of the Midtown Owners that Midtown-Berryhill would soon be "closed for good."

6. On or about December 18, 2002, Aery contracted with Patrick Artis ("Artis") to burn down Midtown-Berryhill. Artis and others broke Midtown-Berryhill's front windows and then threw "Molotov cocktails" - that is, containers filled with a flammable liquid - into Midtown-Berryhill, which caused Midtown-Berryhill to burn to the ground and, for approximately one year, precluded the Midtown Owners from operating their lawful business of selling consumer goods.

7. Revenues at One Quick Stop increased during the time period that Midtown-Berryhill was prevented from selling consumer goods due to Midtown-Berryhill's closure caused by an arson committed at Midtown-Berryhill on or about December 18, 2002.

8. On or about December 19, 2002, Aery and Artis received monetary payment from NASHAR for their roles in destroying Midtown-Berryhill's building, equipment and inventory. Thereafter, Aery received additional benefits such as free and reduced-cost merchandise and car rentals from NASHAR, Diri and other persons.

9. On or about January 9, 2003, Artis received a second monetary payment from NASHAR for his role in destroying Midtown-Berryhill.

10. Throughout the course of the illegal conduct alleged in this Superseding Bill of Information, NASHAR knew and agreed that George Diri, Aery and other persons would engage and did engage in intimidating and harassing tactics through the wrongful use of actual and threatened force and violence for various purposes, including causing the Midtown Owners to cease conducting a lawful business at Midtown-Berryhill's location, inflicting economic and other harms upon the Midtown Owners, forcing the Midtown Owners to make business decisions based on fear and coercion, depleting the assets of the Midtown Owners, reducing Midtown Owners' ability to purchase and otherwise receive items and services affecting interstate and foreign commerce, increasing the revenues of One Quick Stop through diversion of Midtown-Berryhill's revenues to One Quick Stop, and obtaining the Midtown Owners' right to exercise exclusive control over the assets of their convenience store and right to pursue a lawful business at the Berryhill location.

# COUNT ONE

11. The paragraphs set forth in the Introduction to this Superseding Bill of Information are re-alleged and incorporated by reference as if fully set forth herein.

12. From on or about December 1, 2002, and continuing through February 1, 2004, in Mecklenburg County, within the Western District of North Carolina, and elsewhere,

## HAISSAM NASHAR, a/k/a "Sam Nashar"

did knowingly and intentionally combine, conspire, confederate and agree with George Diri, Rico Aery and other persons known and unknown to the Grand Jury to unlawfully obstruct, delay and affect commerce, as that term is defined in Title 18, United States Code, §1951(b)(3), or the movement of articles or commodities in commerce by extortion, as that term is defined in Title 18, United States Code, §1951(b)(2), and to commit and threaten physical violence to other persons or property in furtherance of a plan or purpose to obtain property from another person, with said person's consent, induced by wrongful use of actual or threatened force, violence and fear.

13. In furtherance of the conspiracy and to promote its objects, NASHAR and other persons committed and caused to be committed various overt acts during the conspiracy within the Western District of North Carolina, and elsewhere, including one or more of the following:

   a. On or about December 18, 2002, Aery contracted with Artis to burn down Midtown-Berryhill. Artis and another person broke out Midtown-Berryhill's front windows and then threw Molotov cocktails and other containers filled with gasoline into the store. Midtown-Berryhill burned to the ground and was closed for approximately one year. Because of the fire, NASHAR and Diri gained control over the Midtown's assets, to wit, its ability to operate a lawful convenience store business, thereby eliminating competition with One Quick Stop and assuring monthly payments in higher amounts to NASHAR.

   b. On or about December 18, 2002, NASHAR paid Aery and Artis for their roles in destroying the Midtown-Berryhill's building and inventory.

   c. On or about January 9, 2003, NASHAR made a second monetary payment to Artis for his role in destroying Midtown-Berryhill.

All in violation of Title 18, United States Code, §1951(a).

## COUNT TWO

14. In or around January 1, 2004, in Mecklenburg County, within the Western District of North Carolina, and elsewhere,

**HAISSAM NASHAR, a/k/a "Sam Nashar"**

having been previously convicted on or about November 13, 2003, in the United States District Court for the Eastern District of Missouri, of a crime punishable by imprisonment for a term exceeding one year, that is, Transportation of Counterfeited Cigarette Tax Stamps, did knowingly and unlawfully possess a firearm in and affecting interstate commerce, that is, 9 mm Beretta.

All in violation of Title 18, United States Code, § 922(g)(1).

GRETCHEN C. F. SHAPPERT
United States Attorney

_____
KENNETH M. SMITH
Assistant United States Attorney

*United States v. Nashar* – Superseding Bill of Information, p. 4

Case 3:06-cr-00084-RLV   Document 4   Filed 06/16/06   Page 4 of 4